996 A.2d 1029

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. PABLO CARVAJAL, DEFENDANT-APPELLANT.

Argued December 1, 2009—Decided June 2, 2010.

---

*George T. Taite*, argued the cause for appellant (*DeLuca & Taite*, attorneys; *Mr. Taite* and *Samuel R. DeLuca*, on the briefs).

*Frank J. Ducoat*, Deputy Attorney General, argued the cause for respondent (*Anne Milgram*, Attorney General of New Jersey, attorney).

Justice ALBIN delivered the opinion of the Court.

In *State v. Johnson*, 193 *N.J.* 528, 548–49, 940 *A.*2d 1185 (2008), we held that a criminal defendant has no standing to challenge the search or seizure of "abandoned" property. In this appeal, we apply and adapt the standards enunciated in *Johnson* to the case of an unclaimed duffel bag left on a bus.

In response to police questioning, defendant Pablo Carvajal, a passenger on the bus and a suspected drug courier, stated that he was not carrying any luggage. More specifically, he and fifteen to twenty other passengers who were questioned denied that they owned the unclaimed duffel bag. The police then searched the contents of the bag, which contained drugs and identification cards linking it to defendant. The trial court concluded that the duffel bag had been abandoned and that the warrantless search therefore did not violate the Fourth Amendment. The Appellate Division determined the bag was abandoned under the test set forth in *Johnson* and upheld the search.

We affirm. Defendant knowingly and voluntarily disclaimed any ownership or possessory interest in the bag in response to police questioning, and every other passenger on the bus denied owning the bag. Because the State proved that the duffel bag was abandoned property, defendant had no standing to challenge the warrantless search.

I.

A.

A "reliable" confidential informant notified a New Jersey State Police trooper that a young Hispanic male, possibly in his late twenties, would be "carrying a large quantity of narcotics in his luggage" on a bus traveling from Miami with a scheduled stop in Union City, New Jersey.[1] The bus was en route to New York

---

[1] At a motion to suppress hearing, the State and defendant stipulated to the facts contained in the police reports. Those facts, presented here, were relied on by the trial court. No witnesses were presented at that hearing.

City. The drug courier was described as sporting long hair in a ponytail and wearing light blue jeans and a light-colored shirt. The trooper was told by the informant that the courier had boarded a La Cubana bus in Miami around 11:00 a.m. on November 22, 2006. The bus was scheduled to stop in Union City at approximately 11:00 a.m. the next day. The trooper passed this information along to a narcotics detective at the Union City Police Department.

Union City police officers set up surveillance near the bus station on Bergenline Avenue. The trooper updated the on-scene officers that the courier was wearing a white long-sleeved shirt or jacket. When the bus arrived at about 1:30 p.m. on November 23, defendant Pablo Carvajal, who fit the description given by the informant, stepped off the bus. Defendant stood on the sidewalk as other passengers exited and removed their luggage. Three officers then approached defendant.

Detective Laurencio asked defendant if he would be willing to answer some questions, and defendant replied, "Yes." Based on defendant's accent, the detective questioned defendant in Spanish. Defendant explained that he was traveling from Miami to New York, was not carrying luggage, and did not have a change of clothes. He stated that he was traveling for business purposes and intended to buy wholesale clothing in New York and return to Florida in a few days. He did not yet know where he would be staying in New York. When asked if he was carrying any money for business, defendant produced a small yellow envelope and pulled from it a Washington Mutual Bank Card. With that card, he said, he intended to purchase the clothing. Detective Laurencio saw a Florida driver's license inside the envelope and requested to see it. Defendant presented the license on which appeared the name Pablo Emilio Carvajal. In responding to the questions, defendant stuttered and appeared to be nervous and evasive.

Detective Laurencio then spoke with the bus driver who explained that all the passengers had boarding passes and those who checked in luggage would have a claim ticket. Next, the detective

asked defendant for his boarding pass. Defendant handed the detective a boarding pass with the name Diego Hernandez and told him, "That was a guy on the bus that gave me the boarding pass but he left already." Defendant stated that he did not have a boarding pass of his own.

At that point, the detective entered the bus, introduced himself to the fifteen to twenty remaining passengers, and told them he was conducting an investigation and needed to verify their luggage by checking their claim tickets. After the passengers verified their luggage, only one large duffel bag remained unclaimed. The detective then asked defendant if the bag belonged to him, and he replied, "No."

A K-9 drug-detecting dog, transported to the scene, then "trained" on luggage brought inside the bus depot and "signaled" to the unclaimed duffel bag. Because of the dog's reaction to the duffel bag and because it "appeared to have been abandoned," Detective Laurencio, assisted by another detective, searched the bag. Carefully stashed away inside a comforter and several layers of plastic and brown bags were sixty-five rubber pellets. Each pellet contained .40 ounces of heroin; the total stash of heroin weighed twenty-six ounces. A backpack also was removed from the duffel bag. The contents of the backpack revealed a Sanitas Columbian health card in the name of Pablo Carvajal and a Washington Mutual business card with an account number.

Defendant then was arrested and transported to headquarters where a search of his person yielded the small yellow envelope Detective Laurencio earlier had observed. The envelope contained several cards, including a Washington Mutual business card with the same account number found on the card in the unclaimed duffel bag.

## B.

A Hudson County grand jury charged defendant in a two-count indictment with first-degree possession with intent to distribute heroin, *N.J.S.A.* 2C:35–5(a)(1) and (b)(1), and third-degree posses-

sion with intent to distribute heroin within 1000 feet of school property, *N.J.S.A.* 2C:35–7.

The trial court denied defendant's motion to suppress the evidence recovered from the unclaimed duffel bag. First, the court determined that, based on specific and articulable facts, the Union City police officers conducted an appropriate investigatory stop of defendant. Next, based on all the facts, the court concluded that the duffel bag was abandoned property and that "defendant acted consistent with someone who had no ownership rights or interest in the bag." Therefore, the court held that no "Fourth Amendment right" attached to the warrantless search of the duffel bag.

Defendant pled guilty to first-degree possession with intent to distribute heroin. He was sentenced to a ten-year prison term with a twenty-seven-month parole disqualifier, and assessed appropriate penalties and fines. The possession-with-intent-to-distribute-in-a-school-zone charge was dismissed in accordance with the plea agreement between the State and defendant.

## C.

In an unpublished opinion, the Appellate Division affirmed the trial court's denial of defendant's motion to suppress. Applying the test for standing enunciated in *Johnson, supra,* 193 *N.J.* at 548–49, 940 *A.2d* 1185, the appellate panel held that because defendant had abandoned the duffel bag, the warrantless search was valid. In reaching that conclusion, the panel emphasized that the duffel bag "was unclaimed with no other apparent or known owners" and that "[b]y disclaiming ownership of that bag, defendant knowingly and voluntarily relinquished any possessory or ownership interest in it."

We granted defendant's petition for certification. *State v. Carvajal,* 200 *N.J.* 207, 976 *A.2d* 384 (2009).

## II.

In his petition, defendant argues that he had standing to challenge the warrantless search of the duffel bag and that "the Appellate Court misapplied the holding in *State v. Johnson* 193 *N.J.* 528, 940 *A.*2d 1185 (2008) in deciding that the bag was abandoned." In particular, he contends that "defendant [did] not lose his right to contest the search of the luggage based upon his failure to claim ownership of the bag in response to police questioning."

On the other hand, the State submits that the property was abandoned under the standards set forth in *Johnson* and therefore defendant has no standing to raise a constitutional objection to the search. The State posits that "a knowing and voluntary abandonment can be based on responses to police questioning" provided that "the questioning is not coercive and the police conduct preceding the abandonment [is] lawful."

To examine defendant's challenge to the warrantless search in this case, we necessarily must turn to our jurisprudence on standing and, more specifically, our decision in *Johnson*.

### A.

Under Article I, Paragraph 7 of the New Jersey Constitution, a defendant has automatic "standing to move to suppress evidence from a claimed unreasonable search or seizure 'if he has a proprietary, possessory or participatory interest in either the place searched or the property seized.'" *Johnson, supra,* 193 *N.J.* at 541, 940 *A.*2d 1185 (quoting *State v. Alston,* 88 *N.J.* 211, 228, 440 *A.*2d 1311 (1981)).[2] Under our standing jurisprudence,

---

[2] In *Alston, supra,* we declined to follow the United States Supreme Court, which rejected its own automatic standing rule under the Fourth Amendment in favor of a rule that focused on whether law enforcement officials violated an expectation of privacy that a person possesses in a place seized or item searched. 88 *N.J.* at 222–23, 228, 440 *A.*2d 1311. We eschewed the "amorphous 'legitimate expectations of privacy in the area searched' standard" as applied in

generally, a defendant charged with a possessory offense, such as possession of a controlled dangerous substance with intent to distribute, has standing to challenge the seizure of the evidence that constitutes the possession element of the offense. *See Johnson, supra,* 193 *N.J.* at 548, 940 *A.*2d 1185. In *Johnson,* however, we carved out "a narrow exception to our automatic standing rule." *Id.* at 549, 940 *A.*2d 1185.

In that case, we held that "a defendant will not have standing to object to the search or seizure of abandoned property." *Id.* at 548–49, 940 *A.*2d 1185. We came to that conclusion because a defendant has no constitutionally protected interest in property that has been abandoned. *See id.* at 547–49, 940 *A.*2d 1185. Because our standing rule is intended to provide broad protection to "the privacy rights of our citizens and to deter the police from conducting unreasonable searches and seizures," *id.* at 548, 940 *A.*2d 1185, we have defined "abandoned property" in a way that is consonant with that goal.

For standing purposes, "property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property." *Id.* at 549, 940 *A.*2d 1185. We determined that this definition of abandonment "provides the strongest guarantee that the police will not unconstitutionally search or seize property, which has multiple apparent owners, merely because one person has disclaimed a possessory or ownership interest in that property." *Ibid.* The State bears the burden of proving "by a preponderance of the evidence that the defendant abandoned the

United States Supreme Court cases because that standard gave insufficient protection to the property and privacy rights of New Jersey citizens. *Id.* at 226–28, 440 *A.*2d 1311. Automatic standing provides privacy protection not just to defendants but to other persons whose property might be subjected to an unreasonable search and seizure. Thus, a defendant, in a motion to suppress, might stand as a surrogate in protecting the privacy rights of third parties.

property and therefore has no standing to object to the search." *Id.* at 548 n.4, 940 *A.*2d 1185.[3]

We applied those principles to the facts in *Johnson.* Complaints had been issued against Johnny Holloway, Jr., for committing acts of domestic violence against his girlfriend, and Holloway was believed to be in possession of a .45 caliber handgun. Police officers executed arrest warrants for Holloway at the home of his father, who gave consent to the police to enter into his apartment. *Johnson, supra,* 193 *N.J.* at 535, 940 *A.*2d 1185. With weapons drawn, the officers entered and arrested Holloway, but no gun was found on his person. *See id.* at 535–36, 940 *A.*2d 1185. During the execution of the warrant, the police encountered Andre Johnson—talking on a telephone—as well as Holloway's mother, and a child. *Id.* at 536, 940 *A.*2d 1185. With his gun drawn, a sergeant pulled the telephone from Johnson's hand after Johnson failed to promptly comply with an order to put the receiver down. *Ibid.* Johnson, clad in boxer shorts and a t-shirt, was patted down. *Ibid.* The sergeant told Johnson he would have to leave the apartment. *Ibid.*

Johnson got dressed, put a cardboard box in a duffel bag, and then attempted to leave the apartment with the bag and a large box containing a DVD or VCR player. *Id.* at 536–37, 940 *A.*2d 1185. At that point, the sergeant stopped Johnson and asked if the items were his. Johnson "mumbled, 'yes,'" then eyed the gym bag with a look of surprise, and told the sergeant, "'[T]hese aren't mine. These aren't mine. That's not my bag.'" *Id.* at 537, 940 *A.*2d 1185 (alteration in original). After Holloway's father denied knowing who owned the duffel bag, the sergeant grabbed the bag from Johnson's hands, searched it, found a loaded gun inside the cardboard box, and arrested Johnson. *Ibid.*

---

[3] The preponderance-of-the-evidence burden placed on the State for standing purposes is the same burden that the State must satisfy to establish the constitutionality of a warrantless search. *See State v. Pineiro,* 181 *N.J.* 13, 19–20, 853 *A.*2d 887 (2004).

On those facts, we made several observations. There were other household members in the apartment who easily could have been asked whether they owned the duffel bag. *See id.* at 550, 940 *A.2d* 1185. Our broad rule of standing—that is, allowing Johnson to assert standing—protected those household residents from having "their 'effects' subjected to an unreasonable search." *Ibid.* Moreover, we noted that Johnson did not "forfeit[ ] his right to challenge the search *solely* because he did not incriminate himself" and say he owned the bag he was holding in his hands. *Id.* at 551, 940 *A.2d* 1185 (emphasis added). In fact, Johnson's responses to the police were equivocal. *Id.* at 550, 940 *A.2d* 1185. In light of "[a]ll of the relevant factors," we concluded that "the duffel bag was not abandoned property and that [Johnson] had standing to challenge the search and seizure" of the property. *Id.* at 551, 940 *A.2d* 1185.

It is against the backdrop of the facts and principles laid out in *Johnson* that we must judge defendant's contention that the unclaimed bag on the bus was not abandoned property.

### B.

In *Johnson*, we stated that, for standing purposes, property is abandoned if: (1) a person has either actual or constructive control or dominion over property; (2) he knowingly and voluntarily relinquishes any possessory or ownership interest in the property; and (3) there are no other apparent or known owners of the property. *See Johnson, supra,* 193 *N.J.* at 549, 940 *A.2d* 1185. We now adapt this standard to the circumstances of this case.

First, in *Johnson*, we started with the premise that defendant had dominion or control over the property searched. *See ibid.* There will be cases, however, where the police come upon property that has no apparent owner. The clearest example would be an unattended bag on a subway platform or in a public park. In those instances, no one will have formally relinquished ownership or an interest in the property. If a bag is considered abandoned after ten people tell the police the property is not theirs, it would

seem just as logical that the same bag is abandoned if, in a public place, there is no one present to claim it.

To state the obvious, unless there is some indication that someone owns or controls property left in a public place or on a public carrier, the property—for practical and standing purposes—is abandoned. It is not unusual for police to take into possession lost or seemingly abandoned property. In such circumstances, the police likely will attempt to learn the identity of the owner of the property and preserve its contents. *Cf. South Dakota v. Opperman,* 428 *U.S.* 364, 369, 96 *S.Ct.* 3092, 3097, 49 *L.Ed.*2d 1000, 1005 (1976) (explaining inventory search of seized property ensures its contents are harmless, secures valuable items, and protects against false claims of loss or damage); *State v. Hill,* 115 *N.J.* 169, 173, 557 *A.*2d 322 (1989) (recognizing inventory search exception to warrant requirement).

Unlike in *Johnson,* defendant in this case was not holding the bag. From the objective viewpoint of the police, defendant, arguably, had no apparent control or ownership interest in the unclaimed duffel bag on the bus. The bag did not have an exterior tag indicating that defendant had a possessory interest. Moreover, defendant did not have a claim ticket for the bag and, in response to police questioning, he denied traveling with any luggage or even having a change of clothing. We need not decide this case on the issue of whether defendant had apparent control or ownership of the bag because, here, the remaining *Johnson* factors are satisfied.

Second, assuming that defendant had control or dominion over the property, for abandonment purposes, the question is whether he voluntarily and knowingly relinquished an interest in it. To act voluntarily is to act with a free and unconstrained will, a will that is not overborne by physical or psychological duress or coercion. *See Schneckloth v. Bustamonte,* 412 *U.S.* 218, 225, 227, 93 *S.Ct.* 2041, 2047–48, 36 *L.Ed.*2d 854, 862–63 (1973). To act knowingly is to act with a conscious understanding of what one is doing. *Black's Law Dictionary* 950 (9th ed. 2009) (defining

"knowing" as "[h]aving or showing awareness or understanding; well-informed"). *See also N.J.S.A.* 2C:2–2(b)(2) ("A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result.").

In determining whether a defendant voluntarily and knowingly relinquished a possessory or ownership interest in property in response to police questioning, a court should apply a totality-of-the-circumstances analysis. *Cf. Johnson, supra,* 193 *N.J.* at 551, 940 *A.*2d 1185 (looking to "[a]ll of the relevant factors" to determine if defendant abandoned property).[4] Some factors to consider are the nature and degree of the questioning, the clarity and certainty of the responses, and any restraint on the defendant's freedom of movement.

In this case, the stipulated facts on which the trial court based its ruling do not suggest that the police questioning of defendant was overbearing or coercive or that defendant equivocated in any way in disclaiming an interest in the unaccounted-for luggage. Nothing in the record suggests that defendant did not understand what he was doing when he denied owning any luggage.

The brief investigatory detention is a factor to be considered in determining whether defendant's denial that he was carrying luggage on his trip was voluntary. The encounter between defendant and the police at the Union City bus terminal progressed from a field inquiry to a brief investigatory detention. *State v. Rodriguez,* 172 *N.J.* 117, 126, 796 *A.*2d 857 (2002) ("An encounter becomes more than a mere field inquiry when an objectively reasonable person feels that his or her right to move has been restricted."). The police approached defendant, who fit the description of the drug courier that the confidential informant

---

[4] We have used the totality-of-the-circumstances approach in other settings. *See, e.g., State v. Nyhammer,* 197 *N.J.* 383, 402–05, 963 *A.*2d 316 (voluntariness of confession), *cert. denied,* —— *U.S.* ——, 130 *S.Ct.* 65, 175 *L.Ed.*2d 48 (2009); *State v. O'Neal,* 190 *N.J.* 601, 612–13, 921 *A.*2d 1079 (2007) (probable cause to arrest).

said would be traveling on the bus. From the outset, defendant "freely answered the questions" and was cooperative, stating he had no luggage on the bus. Defendant's discordant and seemingly incredible responses to simple questions posed by the police, however, raised natural suspicions.[5] By then, defendant was not free to go on his way. The brief investigative detention was constitutionally permissible because the officers had an articulable suspicion, "a particularized and objective basis for suspecting" that defendant was involved in criminal activity. *State v. Thomas,* 110 *N.J.* 673, 678, 542 *A.*2d 912 (1988) (quoting *United States v. Cortez,* 449 *U.S.* 411, 417, 101 *S.Ct.* 690, 695, 66 *L.Ed.*2d 621, 629 (1981)).[6] Despite the brief detention, defendant was not subject to a high-pressured grilling or coercive threats, but rather a what-is-your-destination line of questioning.

We reject defendant's argument that a person cannot knowingly and voluntarily relinquish a possessory or ownership interest in a piece of luggage that may incriminate him in response to non-coercive police questioning. If we accepted defendant's position, the methodic questioning by the police of the bus passengers to determine who owned the unclaimed bag would be an effort in futility because anyone who answered "no" to owning luggage could later step forward and assert standing to challenge the warrantless search. That would mean that property could never be considered abandoned under circumstances such as here; in each case the police would have to secure a warrant.

Based on the totality of the circumstances, the trial court found an express and unequivocal relinquishment of ownership of the

---

[5] We note that defendant has not asserted that he should have been given his *Miranda* warnings during this brief encounter. *See Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

[6] The trial court detailed several factors that supported this conclusion: "the confidential informant's tip, the discrepancy between the defendant's bus ticket and his Florida State's driver's license with his name on it and bank cards, [and] defendant's suspicious demeanor during the field inquiry as related by the officer."

bag, that is, "defendant acted consistent with someone who had no ownership rights or interest in the bag." Given our own review of the stipulated facts, we see no reason to disturb the trial court's findings. The traditional standard for voluntariness, that the statement was "the product of an essentially free and unconstrained choice by its maker," is satisfied under these circumstances. *Schneckloth, supra,* 412 *U.S.* at 225, 93 *S.Ct.* at 2047, 36 *L.Ed.*2d at 862.

In contrast, in *Johnson, supra,* the voluntariness of the relinquishment of the duffel bag was a real issue. *See* 193 *N.J.* at 551, 940 *A.*2d 1185. Police were executing an arrest warrant on a third-party in a home, and the sergeant who later questioned Johnson had his gun drawn both when he entered the apartment and when he forcibly pulled a telephone receiver from Johnson's hand. *Id.* at 535–36, 940 *A.*2d 1185. Johnson's responses to the police questioning were equivocal. *Id.* at 537, 940 *A.*2d 1185. At first Johnson mumbled, yes, when asked if the bag he was holding was his and then he responded, "That's not my bag." *Ibid.* Significantly, Johnson did not physically disavow the bag; the sergeant grabbed the bag from Johnson's hand. *Ibid.*

Third, after defendant denied having any luggage on the bus, the police checked with the other bus passengers, who presented their claim tickets for their personal belongings. This process yielded one unclaimed duffel bag with no apparent or known owner in a bus depot.[7] Thus, this case is not like *Johnson* in which the police searched a duffel bag in a home on the basis that it was abandoned property before first determining whether other household members might have owned the bag. Here, the police

---

[7] There may be circumstances in which an unattended piece of luggage at a bus terminal, park, or other public area raises immediate concerns for public safety. We do not suggest that law enforcement must waste precious time seeking to identify the owner of an unattended bag that might contain explosives or some other lethal object. We need not address the contours of such exigent circumstances here.

did not search the bag until all apparent owners had disclaimed any possessory interest in the property.

Defendant raises an additional argument. He claims that he should have been told by the police that he had a right to refuse to consent to search an item of property that he disclaimed owning. *Cf. State v. Johnson*, 68 *N.J.* 349, 354, 346 *A.*2d 66 (1975) (holding that to establish consent as an exception to warrant requirement State must prove occupant had knowledge of right to refuse consent). Stating the argument demonstrates its absurdity, and therefore we need say little more on this point. The right to consent warnings—the need to be told that one has a right to refuse to consent to a search—is not triggered unless the police have some reason to believe a person has some possessory interest in the item or place to be searched.

### III.

The State satisfied its burden of proving by a preponderance of the evidence that the duffel bag was abandoned. Defendant denied having any possessory or ownership interest in the duffel bag, and the police attempted to identify other potential owners before conducting the search of the bag. Defendant therefore had no standing to challenge the warrantless search of the bag. We affirm the judgment of the Appellate Division, which upheld the trial court's denial of defendant's motion to suppress.

*For affirmance*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.