**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0692-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JHAVAL D. RANDOLPH, a/k/a
JAVAL RANDOLPH and
JHAVAL D. RANDOLPH JR,

    Defendant-Appellant.

_____

Submitted February 2, 2022 – Decided July 29, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-01-0034.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Joseph M. Nielsen, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On January 17, 2017, a Union County grand jury returned a two-count indictment charging defendant with third-degree possession of a prohibited weapon, namely a sawed-off shotgun, N.J.S.A. 2C:39-3(b) (count one); and third-degree unlawful possession of a loaded weapon, N.J.S.A. 2C:39-5(c)(2) (count two). After defendant's motion to suppress the shotgun seized without a warrant was denied, and the State's motion to admit defendant's confession to police was granted, defendant entered an open-ended guilty plea to both counts of the indictment. Once the trial court denied defendant's subsequent appeal of the prosecutor's rejection of his application for a Graves Act waiver pursuant to N.J.S.A. 2C:43-6.2, defendant was sentenced to concurrent five-year prison terms, each with a three-and-one-half-year parole disqualifier, pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).[1]

---

[1] "The 'Graves Act' is named for Senator Francis X. Graves, Jr., who sponsored legislation in the early 1980s that imposed a mandatory minimum term of imprisonment and parole ineligibility on defendants convicted of certain predicate crimes committed while in possession of a firearm." State v. Rodriguez, 466 N.J. Super. 71, 87 n.1 (App. Div.), leave to appeal denied, 247 N.J. 234 (2021). "The term 'Graves Act' now refers to all firearms offenses that carry a mandatory minimum sentence." Ibid.

A memorializing judgment of conviction was entered on August 28, 2019, from which defendant now appeals, raising the following points for our consideration:

> POINT I
>
> BECAUSE OFFICERS ARRESTED . . . DEFENDANT AND SEARCHED HIS BAG WITHOUT PROBABLE CAUSE OR ANY VALID EXCEPTION TO THE WARRANT REQUIREMENT, THIS COURT SHOULD REVERSE THE DENIAL OF THE SUPPRESSION MOTION.
>
> POINT II
>
> THIS COURT SHOULD REVERSE THE ARBITRARY AND DISPARATE DENIAL OF DEFENDANT'S N.J.S.A. 2C:43-6.2 APPLICATION FOR A WAIVER OF A 3.5-YEAR MINIMUM PRISON SENTENCE.

Having reviewed the arguments advanced in light of the record and governing legal principles, we affirm.

I.

We recite only those facts relevant to the issues raised on appeal. We glean these facts from the evidentiary hearing conducted on February 2, 2018, during which the State produced two witnesses, Detectives Louis Figueiredo and Carmen Giannetta, both members of the Elizabeth Police Department (EPD) Narcotics Unit. Defendant did not testify or call any witnesses.

3

Figueiredo testified that on September 8, 2016, he received a tip from a confidential informant (CI) that a "short" "black male" by the name of "Jay" in his "early 20s . . . was going to be in the area of the [Broad Street] train station, and he was going to have [controlled dangerous substances] on him." Figueiredo stated he had previously worked with the CI and recounted that the CI was reliable because his previous information had provided the basis for ten other drug-related arrests.

Figueiredo explained that based on the tip, in the early afternoon of September 8, 2016, he "went to the area of the train station, and . . . set up . . . surveillance" accompanied by other EPD and Union County Prosecutor's Office detectives. According to Figueiredo, officers were "scatter[ed] throughout" "the whole surrounding area of the train station," "to try to cover as much of the area as possible," while he and another detective conducted surveillance from a car that was "parked in the lot . . . next to the courtyard" of the train station.

During the surveillance, Figueiredo was in continuous communication with the CI via "[t]ext messages." The CI informed Figueiredo that "Jay" was "already at the train station," "on a bicycle," and "wearing red sneakers, blue jeans, [a] red t-shirt, . . . and . . . a backpack." Figueiredo confirmed that he saw

A-0692-19

a man with "[a] black backpack" "fitting that physical description" "circling the courtyard area . . . on [a] bike." The individual was later identified as defendant.

Figueiredo testified that defendant "rode his bike near the tunnel that leads to Broad Street," at which point he dismounted his bike and "nervously looked around" while frequently checking his cell phone. According to Figueiredo, defendant then "walked over to some stairs that lead to the abandoned tracks, . . . looked around some more, . . . took off his backpack, . . . placed it on the steps, . . . turned around and . . . walked away," "towards the tunnel that leads to the platforms." Figueiredo said once defendant "enter[ed] . . . the tunnel, [they] los[t] sight of him."

Detective Giannetta, one of Figueiredo's back-up officers at the train station, also observed defendant "place[] the backpack down on the . . . stairs." According to Giannetta, approximately "five minutes" later, another detective "pick[ed] up the backpack" and brought it to Giannetta. Giannetta opened the backpack and saw a loaded "sawed-off shotgun" inside, with "[t]he handle . . . taped up." The information was then relayed to Figueiredo.

Figueiredo testified that "[f]rom the time . . . defendant left the backpack to the time that the officers retrieved the backpack," he did not "lose sight of the backpack"; "it remain[ed] in the location that it was in"; and defendant did not

"come back to the backpack." After the discovery of the sawed-off shotgun, Figueiredo "informed . . . the assisting units," who "attempted to locate [defendant]." Officers found defendant "on the steps to the northbound platform" and placed him under arrest. Figueiredo stated that the backpack was not visible from where defendant was arrested on the northbound platform.

Following defendant's arrest, he was taken to the police station where Giannetta administered his <u>Miranda</u>[2] rights. Defendant waived his rights and voluntarily gave a statement, during which he admitted that he had brought a shotgun in his backpack to the train station. Defendant also stated he went to the train station to sell "some weed" to someone he had met on Facebook but he had "no weed" and intended to "just . . . take the [person's] money."

In support of his motion to suppress the search and seizure of the backpack and its contents, defendant argued he did not abandon his backpack, the information from the CI was not sufficient to establish probable cause to search the backpack, and no exigent circumstances existed at the time. In opposition to the State's motion to admit his statement to police, defendant argued that the waiver of his <u>Miranda</u> rights was not knowingly and intelligently given.

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-0692-19

The judge denied defendant's suppression motion in an order entered on February 13, 2018. In a written opinion, the judge determined Figueiredo was credible, as his testimony was "corroborated by a credible witness, photographs and . . . [d]efendant's videotaped statement." The judge also found Giannetta to be "entirely credible," noting that "[h]e testified in a direct and forthright manner without evidence of prevarication," and "[h]is testimony conformed to the evidence and common sense." Thus, the judge made factual findings consistent with the detectives' testimony.

The judge then determined that defendant had abandoned the backpack and thus had no standing to challenge its search and seizure, explaining:

> (1) Defendant walked away from the backpack and proceeded to the railroad boarding platforms at the station; (2) in doing so, he took no steps to conceal the backpack or otherwise prevent its discovery by anyone; (3) the backpack was out of his sight and control when he went to the train platforms; (4) the area in question was a busy train station during mid-day; and, (5) there is nothing in the facts and circumstances to indicate that [d]efendant was going to return to the backpack. Said differently, [d]efendant relinquished both possession and control over the backpack when he left it in an unconcealed location in a busy public place.

The judge further noted that even if defendant had standing to challenge the search, his actions "in leaving his backpack on the steps and walking to the distant train platform invoked the community caretaker role of the police,"

"excus[ing] the warrant requirement." Additionally, the judge found the State "established, beyond a reasonable doubt, a knowing, intelligent, and voluntary waiver by . . . defendant" and granted the State's motion to admit defendant's statement at trial.

Following the adjudication of the motions, defendant pled guilty to both counts in the indictment, indicating that prior to sentencing, he would appeal the prosecutor's denial of his request for a Graves Act waiver to permit a reduced sentence pursuant to N.J.S.A. 2C:43-6.2. On March 26, 2019, during oral argument on defendant's waiver motion, defendant argued that under State v. Alvarez, 246 N.J. Super. 137 (App. Div. 1991), the State's rejection constituted a "patent and gross abuse of discretion," warranting judicial intervention in securing the waiver. Additionally, defendant claimed the State's failure to extend a Graves Act waiver plea offer contradicted the Attorney General guidelines pertaining to first time Graves Act offenders.[3]

---

[3] The Attorney General has issued a directive that channels the exercise of prosecutorial discretion when deciding whether a Graves Act mandatory minimum sentence should be waived pursuant to N.J.S.A. 2C:43-6.2. See Directive to Ensure Uniform Enforcement of "Graves Act" (Oct. 23, 2008, as corrected Nov. 25, 2008) (Directive).

In support, defendant cited ten specific Union County cases where the State had granted a Graves Act waiver to illustrate that the State treated other similarly situated defendants differently. Defendant also asserted, "[m]eaningful judicial review . . . require[d] disclosure of the State's cumulative file of Graves waiver decisions."

The State countered that the Graves waiver was properly considered by two different First Assistant Prosecutors and subsequently denied by both based on the facts of the case and defendant's history. Additionally, the State distinguished all ten Graves waiver cases defendant relied on in his attempt to show that he was treated differently than similarly situated defendants. The State conceded, however, that neither the denial nor the reasoning was ever reduced to writing and provided to defendant. Consequently, the judge adjourned the proceedings and ordered the State to provide a statement of reasons denying defendant's Graves Act waiver request as required by State v. Benjamin, 228 N.J. 358 (2017).

In accordance with the judge's order, the prosecuting attorney provided a letter to defendant and the court dated March 27, 2019, explaining the reasons for the denial. In the letter, the prosecutor outlined the charges and recounted the circumstances of defendant's arrest. The prosecutor also explained that she

9

took into consideration "defendant's juvenile record," "the nature and circumstances of th[e] case," the weight of the evidence, and the applicable "aggravating and mitigating factors" set forth in N.J.S.A. 2C:44-1(a) and (b). The prosecutor concluded, "while defendant is a youthful offender with no adult criminal history, he is no stranger to the criminal justice system," and his "prior robbery adjudications, along with the nature and circumstances of this case, and the type of loaded firearm possessed, together with the State's strong proofs," justified denying defendant a Graves Act waiver.

On April 4, 2019, the parties returned for oral argument, after which the judge denied defendant's waiver motion. The judge found that of the ten cases cited by defendant as comparable or more severe than his case, only nine were relevant to the court's analysis and each case was distinguishable from defendant's case. The judge also determined that "the State . . . did consider all relevant aggravating and mitigating factors and . . . did not act contrary to law." The judge concluded that defendant had failed to show arbitrary or disparate action by the State in denying defendant's request. Further, the judge found that defendant was not entitled to discovery of the State's cumulative file on Graves Act waiver decisions because as the Benjamin Court concluded, "there [were]

sufficient procedural safeguards in place for meaningful judicial review of a prosecutor's waiver decision." 228 N.J. at 375. This appeal followed.

II.

In Point I, defendant advances two arguments in support of his claim that the judge erred in denying his motion to suppress the backpack and shotgun. First, defendant claims that the judge erred in finding the officers had probable cause to arrest him based on the CI's uncorroborated tip. Second, defendant claims that the judge erred in finding defendant had abandoned his backpack and therefore lacked standing to challenge the search.

In evaluating a trial judge's ruling on a suppression motion, our review of the judge's factual findings is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999). We must defer to those factual findings "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015); see also State v. Nelson, 237 N.J. 540, 551 (2019) (same). In particular, we defer to the trial judge's assessments of credibility, given the judge's ability to make "observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." Locurto, 157 N.J. at 474. Based on that standard, the trial judge's findings should be overturned "only if they are so clearly mistaken 'that the

11

interests of justice demand intervention and correction.'"  State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).  By contrast, the trial judge's interpretation of the law and the legal "consequences that flow from established facts" are reviewed de novo.  State v. Gamble, 218 N.J. 412, 425 (2014).

Here, we are satisfied the judge's factual findings are amply supported by the record.  As to the judge's legal conclusion, defendant claims the judge erred when he found defendant had abandoned his backpack and thus lacked standing to challenge the search.  As a result, he contends the sawed-off shotgun confiscated from this unconstitutional seizure must be suppressed.  We disagree.

The United States and New Jersey Constitutions guarantee that individuals shall be free from "unreasonable searches and seizures."  U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.  "Generally, a warrantless search or seizure is invalid absent a showing that it 'falls within one of the few well-delineated exceptions to the warrant requirement.'"  State v. Alessi, 240 N.J. 501, 517 (2020) (quoting State v. Mann, 203 N.J. 328, 337-38 (2010)).

Where property has been abandoned "a defendant will not have standing to object to the search or seizure of" that property.  State v. Johnson, 193 N.J. 528, 548-49 (2008).  Stated differently, "the abandonment of property strips a

person of standing to challenge a search." Id. at 547. "To that extent, abandoned property falls within an exception to the warrant requirement," and "the State bears the burden of proving by a preponderance of the evidence" that the property is abandoned. State v. Brown, 216 N.J. 508, 528-29 (2014).

"For the purposes of standing, property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property." Johnson, 193 N.J. at 549. "To act voluntarily is to act with a free and unconstrained will, a will that is not overborne by physical or psychological duress or coercion." State v. Carvajal, 202 N.J. 214, 226 (2010). "To act knowingly is to act with a conscious understanding of what one is doing." Ibid.

Where items are discarded in response to an illegal seizure, that evidence is not abandoned, and remains subject to suppression. State v. Tucker, 136 N.J. 158, 172 (1994). As the Tucker Court explained:

> "Property is not considered abandoned when a person throws away incriminating articles due to the unlawful actions of police officers." Thus, where a person has disposed of property in response to a police effort to make an illegal arrest or illegal search, courts have not hesitated to hold that property inadmissible.

13

> [Ibid. (quoting 1 Wayne R. LaFave, Search and Seizure § 2.6(b) at 471-72 (2d ed. 1987)).]

Guided by these principles, we agree with the judge's legal conclusion that defendant abandoned the backpack. The evidence supports the judge's determination defendant knowingly and voluntarily relinquished any possessory or ownership interest he may have had in the backpack when he left it on the steps near the "old tracks" of a public train station in the middle of the afternoon and walked away, heading "towards the tunnel that [led] to the platforms." Further, because there were no other apparent or known owners of the property, and the police did not confront or accost defendant before he discarded the backpack, defendant's action constituted abandonment. Tucker, 136 N.J. at 172. As a result, defendant had "no right to challenge the search and seizure of that property." Johnson, 193 N.J. at 548.

The judge rejected the State's claim that "because the officers had probable cause to arrest [defendant] based on the [CI's] information," the search of defendant's backpack was a search incident to arrest. As such, we need not address defendant's contention regarding the sufficiency of the CI's tip. Also, in light of our decision that defendant abandoned his backpack and had no standing to object to its search or seizure, we need not address defendant's

argument that the judge erred in applying "the community caretaking exception to the warrant requirement" and we offer no opinion on that determination.

III.

In Point II, defendant contends the judge erred in denying his appeal to overturn the prosecutor's "arbitrary and capricious" rejection of a Graves Act waiver under N.J.S.A. 2C:43-6.2.  In support, defendant asserts he was "only accused of non-violent, third-degree possession; he had no prior adult felony convictions; and he was out on bail for years pending sentencing without ever being accused of any new crimes."  Defendant further argues that the prosecutor's rejection deprived him of "due process and equal protection of the laws" as compared to the treatment afforded "similarly-situated" as well as more egregious offenders.  In that regard, defendant relies on the summaries of ten firearm prosecutions provided to the trial court to show disparity and discrimination in the extension of Graves Act waivers.[4]

---

[4]  Defendant originally submitted ten cases for the trial court to consider in assessing whether there was a disparity in Graves Act waivers granted by the State in other cases.  On appeal, defendant submits an additional ninety-two cases to this court to highlight his position.  However, "a reviewing court will not consider evidentiary material which is not in the trial court's record."  Mount Olive Complex v. Twp. of Mount Olive, 340 N.J. Super. 511, 527 (App. Div. 2001) (citing R. 2:5-4(a)); certif. granted, cause remanded, 174 N.J. 359 (2002); see also State v. Robinson, 200 N.J. 1, 19 (2009) ("The jurisdiction of appellate

The Graves Act requires a mandatory term of imprisonment for individuals convicted of various firearm-related crimes. N.J.S.A. 2C:43-6(c). The Act specifically requires that "[t]he term of imprisonment shall include the imposition of a minimum term" which "shall be fixed at one-half of the sentence imposed by the court or [forty-two] months, whichever is greater." Ibid.

The Graves Act, however, contains an "'escape valve' to the mandatory sentence requirements." Alvarez, 246 N.J. Super. at 139. This "escape valve" provides:

> On a motion by the prosecutor made to the [A]ssignment [J]udge that the imposition of a mandatory minimum term of imprisonment under [the Graves Act] for a defendant who has not previously been convicted of an offense under [the Graves Act], . . . does not serve the interests of justice, the [A]ssignment [J]udge shall place the defendant on probation . . . or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole. The sentencing court may also refer a case of a defendant who has not previously been convicted of an offense under [the Graves Act] to the [A]ssignment [J]udge, with the approval of the prosecutor, if the sentencing court believes that the interests of justice would not be served by the imposition of a mandatory minimum term.
>
> [N.J.S.A. 2C:43-6.2.]

---

courts . . . is bound[] by the proofs and objections critically explored on the record before the trial court by the parties themselves.").

16

"[W]ritten guidelines exist to channel prosecutorial discretion" in evaluating waiver applications. Benjamin, 228 N.J. at 372. These guidelines, outlined in the Directive, instruct prosecutors "contemplating a waiver to 'consider all relevant circumstances concerning the offense conduct and the offender,' such as applicable aggravating and mitigating circumstances under N.J.S.A. 2C:44-1." Benjamin, 228 N.J. at 369 (quoting Directive at 12). Should the prosecutor decide not to approve the waiver, a defendant "may move before the [A]ssignment [J]udge or designated judge . . . for a . . . hearing as to whether the prosecutor's rejection or refusal is grossly arbitrary or capricious or a patent abuse of discretion." Alvarez, 246 N.J. Super. at 147 (quoting State v. Cengiz, 241 N.J. Super. 482, 497-98 (App. Div. 1990)). A defendant "must make a showing of arbitrariness constituting an unconstitutional discrimination or denial of equal protection constituting a 'manifest injustice,'" and the Assignment Judge or designee must determine if a hearing is warranted "in the interests of justice." Id. at 148-49.

The interest of justice standard requires the court to consider whether "the sentence reflect[s] the Legislature's intention" because "the severity of the crime [is] the most single important factor in the sentencing process." State v. Megargel, 143 N.J. 484, 500 (1996). The court "must consider the nature of and

A-0692-19

the relevant circumstances pertaining to the offense," including "facts personal to the defendant" such as the "defendant's role in the incident to determine the need to deter him from further crimes and the corresponding need to protect the public from him." Id. at 500-01. The judge must identify "any reasons, compelling or otherwise," as to why the interest of justice standard applies. Id. at 503. In that regard, "courts must 'view the prosecutor's decision through the filter of the highly deferential standard of review.'" State v. Waters, 439 N.J. Super. 215, 237-38 (App. Div. 2015) (quoting State v. Wallace, 146 N.J. 576, 589 (1996)).

Here, in denying defendant's application to overturn the prosecutor's rejection of a Graves Act waiver, the judge designated to hear waiver applications concluded defendant failed to carry his heavy burden to establish "a patent and gross abuse of discretion" on the part of the prosecutor. Critically, the judge pointed out that the prosecutor adhered to "the Attorney General Guidelines for waiving the Graves Act"; "did not act contrary to law"; and "consider[ed] all relevant aggravating and mitigating factors" set forth in N.J.S.A. 2C:44-1. Specifically, the judge noted that the prosecutor found aggravating factors three and nine and no mitigating factors. See N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that . . . defendant will commit another offense");

18

N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring . . . defendant and others from violating the law").

The judge explained that while defendant "ha[d] not met [his] burden" for a hearing, nonetheless, she had conducted a "fairly comprehensive hearing because the [c]ourt . . . [had] reviewed a number of cases cited by . . . defen[dant,]" and had considered the State's "explanations" in distinguishing those cases from defendant's. After painstakingly discussing the cases cited by defendant, the judge concluded, while "there were some similarities in some of the cases . . . , defendant's case . . . is different," in that "he left a loaded . . . sawed-off shotgun in a train station in an area clearly . . . accessible to the public." The judge acknowledged that while "no one was hurt," "[t]he potential harm, including serious injury or death to a member of the public, [was] significant in this case." Therefore, according to the judge, "[t]his case . . . is unlike any of the cases cited by . . . defendant . . . to support defendant's request for a hearing."

The judge also acknowledged the State's strong proofs, as well as the fact that defendant's request was "submitted to" and "denied" by two "different [F]irst [A]ssistant [P]rosecutor[s]." Further, the judge "agree[d] with the State's finding of [a]ggravating [f]actors [three] and [nine]" and found no "competent,

19

credible evidence" to support the mitigating factors urged by defendant. The judge stated although defendant "did not have an adult criminal record" and was twenty-three-years-old at the time of the offense, he had "two prior adjudications for second-degree robbery" in "2009 and 2010." Additionally, in 2010 and 2011, defendant "was adjudicated delinquent for shoplifting" and "failure to make lawful disposition," respectively. The judge noted that although defendant was placed on probation, he violated probation.

The judge also considered "the nature" of the offense and its "relevant circumstances," recognizing "defendant was in possession of a loaded sawed-off shotgun, loaded being one issue and second being a . . . sawed-off shotgun which no one can possess legally." Moreover, the judge reasoned, not only did defendant possess a "sawed-off shotgun at a train station but . . . defendant admitted that he was there to commit additional criminal conduct," namely a drug sale. Accordingly, the judge denied defendant's waiver request, finding that "[u]nder the circumstances of th[e] case the interests of justice d[id] not demand that the State provide an offer under the . . . statute."

We agree with the judge's cogent and well-reasoned decision and reject defendant's arguments that the denial was discriminatory, inconsistent with the Attorney General's Directive, or arbitrary and capricious. "On the contrary, we

are satisfied that the judge's robust review and analysis were sound, and fulfilled the role contemplated in <u>Benjamin</u>, to 'ensure[] that prosecutorial discretion is not unchecked.'" <u>State v. Andrews</u>, 464 N.J. Super. 111, 124 (App. Div. 2020) (quoting <u>Benjamin</u>, 228 N.J. at 373).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21