**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1470-21

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

CURTIS L. GARTRELL,

    Defendant-Respondent.

_____

Argued September 28, 2022 – Decided October 12, 2022

Before Judges Whipple, Mawla and Marczyk.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 20-01-0058 and 20-01-0061.

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor Director argued the cause for appellant (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the briefs).

Alison Perrone, Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Alison Perrone, of counsel and on the briefs).

PER CURIAM

This is the State's appeal from an order granting suppression of evidence. We reverse.

The record informs our decision. During the afternoon of November 6, 2019, New Jersey Transit Police responded to a call that a physical altercation occurred on a Greyhound bus outside of Newark Penn Station. There, police spoke to defendant Curtis Gartrell about his role in the incident while on the sidewalk outside. Defendant had his blue, rolling suitcase beside him on the sidewalk while he spoke to police. Defendant provided his identification and spoke to the officers about his role in the altercation.

Transit Police ran a background check for outstanding warrants. This took several minutes for the dispatch to complete. While waiting, defendant made and received several cell-phone calls. He explained to the officers that he was coordinating with someone to arrange his pickup from the station. He attempted to give instructions to the person on the phone as to his location, to be picked up. The police suggested that defendant direct his ride to Raymond Plaza West, and park across the street from where he was then located. Shortly afterwards, a white SUV arrived across the street, and defendant gestured to it, saying "I see you right there!"

2

The police then learned defendant had an active warrant. The warrant did not authorize a search of the bag. The officers told defendant he was under arrest and instructed him to place his hands behind his back. Defendant said that he would comply but asked to leave his bag and his wallet with his brother, who he implied was the driver of the SUV. The police did not directly respond to this request, stating "we're going to explain everything, but right now, you've gotta turn around, hands behind your back."

While turning around, defendant glanced in the direction of the SUV and shouted "Spoon, can you get my clothes, bro?" Almost immediately after this, before police could cuff him, defendant fled on foot, leaving the bag behind on the sidewalk. The driver of the white SUV never responded to defendant's request, never got out of his car, approached the officers, or asked whether he could take the bag.

Several officers pursued defendant and apprehended him a block away from their original location. Another officer remained behind to secure the bag, which was left on the sidewalk outside of Penn Station.

After learning defendant was apprehended, two officers then performed what they termed a "search incident to arrest" of the suitcase on the sidewalk. At that point, defendant was in custody about twenty feet away, inside Penn

3

Station. The search uncovered two handguns wrapped in clothing. One was loaded with ten rounds in the magazine, the other was empty. The bag also contained eighty-six additional rounds (of which thirty-six were "hollow point" style bullets), 3.2 ounces of crystal methamphetamine, a gram of marijuana, and $2,465.10 in cash.

On January 13, 2020, an Essex County grand jury indicted defendant. He was charged with third-degree possession of a controlled dangerous substance (crystal methamphetamine), N.J.S.A. 2C:35-10(a); second-degree unlawful possession of weapons, N.J.S.A. 2C:39-5(b); fourth-degree possession of armor-piercing bullets, N.J.S.A. 2C:39-3(f); fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2; and two counts of second-degree possession of a firearm by a convicted felon, N.J.S.A. 22C:30-7(b).

Defendant moved to suppress evidence seized from the suitcase and the trial judge conducted an evidentiary hearing. Officers Adam Konopka and Thomas Dietze, frequently aided by review of body camera footage at the hearing, testified credibly according to the judge.

The State opposed the motion and advanced two arguments: the bag was abandoned property at the time of the search, so defendant lacked standing to challenge; and that the search incident to arrest exception nevertheless justified

the search.  The court found defendant did not abandon his luggage bag, as he did not knowingly and voluntarily relinquish his possessory or ownership interest in the bag.  The court continued:

> Defendant had a conversation with the police for several minutes about the altercation on the bus, which was completely unrelated to the contents of his suitcase.  During the conversation, [d]efendant's suitcase was sitting directly behind him.  Officers Konopka and Dietze both testified that they believed the suitcase belonged to [d]efendant.  Further, after they advised [d]efendant they needed to arrest him on an outstanding warrant, he immediately communicated to them that he wished to first give his "clothes" to his brother, gesturing towards the blue luggage bag.  After officers did not respond to his request and began to pin his arms behind his back, [d]efendant yelled in the direction [of] who he said was his brother, who was parked on the other side of the street in a white SUV, to come get his clothes.  This white SUV was visible in the body-worn camera footage. . . .
>
> This suggests to the [c]ourt that [d]efendant did not intend to relinquish his interest in the property, but rather intended to maintain his interest or transfer his interest to his brother. . . .
>
> Defendant had his luggage in his possession for several minutes in the presence of police and only fled when officers turned him around to handcuff him, after having spoken to them for several minutes.  This does not suggest to the [c]ourt that he voluntarily discarded or left behind his suitcase.  Additionally, while the defendants in the other cases [the court has reviewed] did not objectively have any reason to believe they could come back later and find their suitcases

5

untouched, [d]efendant did have reason to believe that. He could reasonably believe that his brother, who was parked across the street and who he yelled and gestured to get his luggage, would in fact go and get his luggage for him, and that he could retrieve it from his brother later. . . .

The [c]ourt does not speculate as to why [d]efendant fled from the police, but it is clear from the record that when he did, it was not because he wanted to discard the luggage or relinquish his interest in the property. Thus, for the reasons stated, the [c]ourt finds that [d]efendant did not abandon the blue luggage.

Nor did the court find the search incident to arrest exception applicable:

[O]nce an arrestee has been arrested, removed, and secured elsewhere, the considerations informing the search incident to arrest exception are absent and the exception is inapplicable. . . . The considerations to the exception are to ensure police safety or to avoid the destruction of evidence. . . . Here, it is undisputed that [d]efendant fled and was thus arrested and secured near Edison Place and Alling Street, on a different street than Newark Penn Station. He was nowhere near the suitcase when it was being searched, and thus there was no need to ensure police safety or to avoid the destruction of evidence. Thus, the search incident to arrest exception does not apply. . . .

This appeal followed.

The State raises the following issues on appeal:

POINT I
THE SEARCH OF DEFENDANT'S LUGGAGE BAG
WAS CONSTITUTIONAL, AS BOTH A SEARCH OF

6

ABANDONED PROPERTY AND A SEARCH INCIDENT TO DEFENDANT'S LAWFUL ARREST.

A. THE SEARCH OF DEFENDANT'S LUGGAGE BAG WAS PERMISSIBLE BECAUSE DEFENDANT ABANDONED IT WHEN HE RAN FROM THE POLICE AND LEFT IT BEHIND.

B. THE SEARCH OF DEFENDANT'S LUGGAGE BAG WAS ALSO PERMISSIBLE AS A SEARCH INCIDENT TO A LAWFUL ARREST.

I.

When considering suppression motions, we "defer to the trial court's factual findings that are supported by sufficient credible evidence in the record and will not disturb those findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Rivas, 251 N.J. 132, 152 (2022) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). However, we review legal conclusions drawn from those facts de novo. State v. Radel, 249 N.J. 469, 493 (2022). At issue here is the legal status of defendant's luggage at the time of the search. This is a question of law, which is not undergirded by any factual dispute between the parties.

On appeal, the State contends the search was permissible because defendant's bag was abandoned at the time of the search. Specifically, the State asserts that by fleeing, defendant manifested no intention of returning and

7

coming back for the bag, which constituted abandonment. Defendant's counterargument rests on the statements he made to the police and the driver of the white SUV prior to fleeing, which he asserts established an enduring property interest in the bag that persisted even after his escape attempt. Since a property interest existed, defendant argues, the bag was not truly abandoned, and therefore the police were required to obtain a warrant prior to the search.

The federal and New Jersey constitutions both provide for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I ¶ 7. If property was abandoned, however, the defendant lacks standing to challenge a search. State v. Johnson, 193 N.J. 528, 541 (2008). A person "lacks a constitutionally protected interest in property that has been abandoned." State v. Carvajal, 202 N.J. 214, 223 (2010).

We consider three factors to determine abandonment. Property is "abandoned" when: 1) a person first has control or dominion over property; 2) he then knowingly and voluntarily relinquishes any possessory or ownership interest in the property; and 3) there are no other apparent or known owners of the property. Id. at 225 (citing Johnson, 193 N.J. at 549). Put another way, these factors determine "whether, given the totality of the circumstances, an

objectively reasonable police officer would believe the property is abandoned." State v. Brown, 216 N.J. 508, 531 (2014) (articulating the abandonment standard in context of real property).

These factors distinguish between searches where property truly lacks a reasonably apparent owner, or has been jettisoned by a defendant in order to avoid association with contraband, from those situations where the police are using "abandonment" as a pretext for an otherwise unconstitutional search. See, e.g., State v. Ellis, 246 N.J. Super. 72, 76 (Law Div. 1990) (placing bags on the ground momentarily while speaking to police does not constitute abandonment). The "control" factor seeks to distinguish property which can reasonably be associated with someone from property with no apparent owner at all, in which case the other steps are unnecessary. Carvajal, 202 N.J. at 225 ("The clearest example would be an unattended bag on a subway platform or in a public park."). The "voluntary relinquishment" factor requires a defendant to freely decide to take some action to remove the association present in the first prong. Id. at 226. And the third "other apparent owners" factor ensures that the police cannot claim that an item is abandoned just because the first two factors are satisfied with regards to a single person, when there are other potential owners nearby. Johnson, 193 N.J. at 550.

Here, there is no dispute that "control" is satisfied. Defendant had his bag with him throughout this encounter with the police until he fled, and testimony established that the officers understood it to belong to him. Thus, we address whether 1) running away and leaving the bag behind, defendant "voluntarily relinquished" any possessory interest in the bag; and 2) whether defendant's relationship and communication with the person picking him up obligated the police to check with the driver prior to searching the bag. The inquiries are intertwined, because defendant's main argument that he did not "voluntarily relinquish" the bag is also tied to the presence of a third party, the SUV driver.

## II.

The Supreme Court of New Jersey has examined voluntary relinquishment in Carvajal, 202 N.J. at 229. There, the police received a tip that a passenger on a bus would be carrying a large amount of heroin in his luggage. Id. at 218. The police questioned Carvajal, who fit the tip's description. Id. at 219. The officers then proceeded to have the other passengers retrieve their baggage in turn, leaving one bag unclaimed. Id. at 220. Carvajal disclaimed owning it.[1] Ibid. The police then searched the bag, without a warrant. Ibid.

---

[1] The police also subjected the bag to a dog test before searching it, which rendered a positive result. Carvajal, 202 N.J at 220.

The Carvajal Court denied suppression, holding that the bag was abandoned. Id. at 230. The Court first reasoned generally that the police have a need to search property left in public places without an apparent owner. Id. at 226. Then, turning to the abandonment factors, the Court examined whether the defendant had "voluntarily and knowingly" relinquished any interest in it by claiming that it did not belong to him when confronted with the lone remaining piece of luggage on the bus. Id. at 228. The Court upheld the trial court's finding that "defendant acted consistent with someone who had no ownership rights or interest in the bag" because Carvajal's statement disaffirming his ownership was "the product of an essentially free and unconstrained choice." Id. at 229 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)). Relinquishment, therefore, must be the result of some action a defendant chooses to take. Ibid.

This requirement has been specifically examined in the context of an escape attempt on foot, where luggage is left behind. State v. Farinich, 179 N.J. Super. 1 (App. Div. 1981), aff'd o.b. 89 N.J. 378 (1982). In Farinich, police received a tip that a piece of luggage at the airport contained contraband. Id. at 4. When Farinich claimed the luggage from the baggage carousel, officers confronted him. Ibid. He punched one of them and fled on foot, leaving the

11

luggage behind.  Ibid.  Farinich was apprehended "some distance away" and the police proceeded to search his bag without a warrant.  Ibid.

Farinich held that the act of fleeing from police can implicitly constitute abandonment.  Id. at 7.  No direct disavowal of ownership was required.  Ibid.  The court reasoned it would "be unreasonable to infer anything other than that defendants intended to place as much distance between themselves and the suitcases as possible."  Ibid.  "For obvious reasons," the court continued, "it is a fair inference that defendants had no desire ever to reclaim their belongings."  Ibid.

Moreover, when undertaking a criminal action, a person may not choose to leave property unattended in a public space and retain a constitutionally protected Fourth Amendment interest in it.  State v. Burgos, 185 N.J. Super. 424, 428 (App. Div. 1982).  In Burgos, the defendant placed an aspirin tin on the ground, underneath a car.  Id. at 426.  He would speak to clients elsewhere, and then return to the tin and retrieve illegal drugs stashed inside, in order to sell them.  Ibid.  When the police observed this and searched the stash, Burgos objected on the basis that he had a protected Fourth Amendment interest in the tin, despite leaving it on the ground unattended.  Ibid.

Burgos held "[w]hether or not appellant intended eventually to return and retrieve [discarded property] is irrelevant." Id. at 248 (quoting Smith v. United States, 292 A.2d 150, 151 (D.C. App. 1972)). The court continued: "the seizure took place on a public street and did not involve invasion of any zone of defendant's personal privacy, such as a home, office, or car." Ibid.

The trial court here distinguished Carvajal and Farinich on the basis that defendant told police that he wished to give his clothes to his brother. The court reasoned "while the defendants in [Farinich] did not objectively have any reason to believe that they could come back later and find their suitcases untouched, defendant [here] did have reason to believe that." The court concluded defendant could reasonably believe that the person in the car parked across the street "would in fact go and get his luggage for him, and that he could retrieve it" later.

However, we conclude the question at this stage of the analysis is: Did defendant's request to leave his clothes with his brother (coupled with his shouting at "Spoon" to grab his clothes, and his earlier statements to officers arranging his ride from the station) alter the nature of his property interest in his bag at the moment he decided to flee arrest? Whether there was another apparent owner of the bag is a separate issue to be analyzed under the third factor.

13

Any communication with defendant's brother, inferred to be the driver of the white SUV, is immaterial in light of defendant's decision to "place as much distance as possible between himself and the bag as possible." The driver made no effort to retrieve the bag or talk to the police, did not exit his car, and was not definitively linked to defendant.

Running from the police and leaving the bag behind were decisions defendant made of his own free will. He did not attempt to take the bag with him. Considering that defendant could not feasibly come back to the station to retrieve the bag while succeeding in his objective of evading capture, it is difficult to interpret the decision to run as anything but an attempt "to place as much distance between himself and the bag as possible . . . ." Farinich, 179 N.J. Super. at 7.

Moreover, leaving property unattended in a public space can clearly constitute abandonment, especially if that property is left unattended to facilitate criminal activity. Burgos, 185 N.J. Super at 428. So, for defendant's argument to hold water, at least some transfer of the property must have occurred prior to leaving the luggage behind. See ibid. No such transfer occurred here.

As to the third factor –whether there was another apparent owner– we note even if voluntarily relinquished, property is still not "abandoned" if there are

other potential owners that a reasonable police officer should inquire with prior to search. Johnson, 193 N.J. at 550 (holding that property found in a home with multiple residents was not abandoned when only one occupant disavowed ownership); Carvajal, 202 N.J. at 229 (holding that, as all the other bags on the bus had been claimed, there were no alternative apparent owners).

Neither the State nor defendant directly raises the issue of apparent ownership of third parties as a distinct category from voluntary relinquishment. However, because abandonment is broadly at issue, and the parties intertwine this analysis with the "voluntary relinquishment" standard, we address it and find it has no merit under the facts of this record.

The SUV driver made no indication that he would claim the bag, or that the bag belonged to him. Defendant referred to the bag as "my clothes," which implies that the items did not belong to someone else. The police testified that they understood the bag to be defendant's property.

Finally, an outcome in defendant's favor is not necessitated by Johnson. 193 N.J. at 550. That case concerned police within a private home, where a finite number of people had obvious claims to the personal property contained within. Ibid. The events in the present case took place on a sidewalk outside a transit hub, an area where the police's interest in searching bags is much higher.

A-1470-21

An objectively reasonable police officer, especially one assigned to a transit hub where bags left unattended present a threat to public safety, could easily conclude that a bag left behind after a police chase was abandoned, especially if no one came forward to claim it. Brown, 216 N.J. at 531.

To the extent we have not addressed any remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1470-21