SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Curtis L. Gartrell (A-31-22) (087597)**

**Argued September 11, 2023 -- Decided January 17, 2024**

**SOLOMON, J., writing for the Court.**

In this appeal, the Court considers whether defendant Curtis Gartrell, who fled from police outside of Newark Penn Station -- leaving behind a suitcase containing handguns, ammunition, illegal narcotics, and cash -- abandoned the suitcase and is therefore without standing to challenge law enforcement's warrantless search of the bag.

During the evening of November 6, 2019, an individual at Newark Penn Station reported to New Jersey Transit Police Officers that he had been punched by defendant. As officers spoke to defendant, there was a blue rolling suitcase near him. The officers ran a search for outstanding warrants against defendant. While waiting for the results of the record check, defendant had several phone conversations with a person he referred to as "Spoon" and "bro," who defendant claimed was coming to pick him up.

Meanwhile, the results of the record check revealed an active warrant for defendant. Officers informed defendant of the warrant and advised him that they intended to place him under arrest. Defendant asked the officers whether he could first give his luggage -- the blue suitcase -- to "Spoon," but they declined the request, stating they would first take defendant into custody. Defendant called out, "'Spoon,' will you get my clothes, bro," and turned as if preparing to be handcuffed; he then fled from the officers on foot, leaving the blue suitcase unattended on the sidewalk. Officers apprehended defendant after a brief foot chase.

While other officers chased and arrested defendant, one officer secured and searched the suitcase at the entrance of the station, revealing the contraband. Defendant was charged with possessory offenses and resisting arrest.

Defendant filed a motion to suppress evidence recovered from the warrantless search of the suitcase. The trial court granted the motion, reasoning that defendant did not flee police because he wanted to discard the suitcase or relinquish his interest in it. The trial court also rejected the State's argument that the search

1

incident to arrest exception applied.  The State appealed, and the Appellate Division reversed, holding that defendant had abandoned the suitcase.  The Court granted leave to appeal.  253 N.J. 279 (2023).

**HELD:**  Defendant's possessory or ownership interest in the suitcase ceased when he fled police outside Penn Station and deliberately left his suitcase behind in a public place with no evidence of anyone else's interest in the bag.  Because the State has demonstrated by a preponderance of the evidence that the suitcase was abandoned, defendant is without standing to challenge its seizure and search.

1.  When property is abandoned, a defendant has "no right to challenge the search or seizure of that property."  State v. Johnson, 193 N.J. 528, 548 (2008).  Property is abandoned only if "(1) a person has either actual or constructive control or dominion over property; (2) he knowingly and voluntarily relinquishes any possessory or ownership interest in the property; and (3) there are no other apparent or known owners of the property."  State v. Carvajal, 202 N.J. 214, 225 (2010).  The State bears the burden of proving that property was abandoned by a preponderance of the evidence.  In Johnson, the Court held that the defendant had not surrendered his standing to challenge the search of a bag solely because he had disclaimed ownership, given that the bag was in an apartment with five occupants and could have belonged to any one of them.  193 N.J. at 549-50.  The Court observed that "the police might still have easily determined its owner."  Id. at 550.  In Carvajal, the Court upheld the search of an unattended bag left on a bus.  202 N.J. at 218, 230.  There, the bag was abandoned because it was "left in a public place or on a public carrier" with "no apparent owner," and the "police did not search the bag until all apparent owners had disclaimed any possessory interest in the property."  Id. at 225-26, 229-30.  (pp. 11-14)

2.  Here, no one disputes that defendant fled police to avoid a lawful arrest, knowing that "Spoon," if such a person existed -- the Court notes that the defense was unable to confirm "Spoon's" identity -- did not yet have possession of the suitcase.  The act of fleeing to avoid a lawful arrest in a public place demonstrates defendant's intent to place as much distance as possible between himself and the property left behind.  When defendant ran from police in the heavily trafficked area on the sidewalk outside of Penn Station, without any indication that he intended to return, he abandoned the suitcase in a public place.  And, unlike when there are a finite and fixed number of potential owners as in Carvajal and Johnson, the police cannot be expected to identify and canvass everyone at or near a major transportation hub to determine who, if anyone, might have a possessory interest in a bag deliberately left behind in a public place.  Having thus concluded that the suitcase was abandoned and defendant is without standing to challenge its seizure and search, the Court does not reach the issue of whether police conducted a constitutionally valid search incident to arrest.  (pp. 15-17)

2

**AFFIRMED and REMANDED to the trial court.**

**JUSTICE NORIEGA, dissenting,** writes that the majority expands the previously narrow abandonment exception to New Jersey's automatic standing rule by making abandonment synonymous with flight. In Justice Noriega's view, it is a step backwards in New Jersey jurisprudence to announce a rule that mere flight, without more, ends a defendant's constitutional right to challenge a search where, as here, the defendant's actions, words, and behavior all demonstrated his control of and possessory interest in the subject luggage before fleeing. Justice Noriega explains that the police proceeded with the warrantless search here under the theory of "search incident to arrest" and that the theory of abandonment now used to approve that search arose only during litigation. Justice Noriega expresses concern that the majority's holding stretches the concept of abandonment into an exception to the warrant requirement, rather than a pure issue of standing, and notes that the police in this case could have permissibly conducted an orderly inventory search.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and FASCIALE join in JUSTICE SOLOMON's opinion. JUSTICE NORIEGA filed a dissent.**

# SUPREME COURT OF NEW JERSEY
## A-31 September Term 2022
### 087597

State of New Jersey,

Plaintiff-Respondent,

v.

Curtis L. Gartrell,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| September 11, 2023 | January 17, 2024 |

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alison Perrone, Assistant Public Defender, of counsel and on the briefs).

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom, Molly K.C. Linhorst, and Jeanne LoCicero, on the brief).

William P. Cooper-Daub, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; William P. Cooper-Daub, of counsel and on the brief).

Bruce S. Rosen submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Bruce S. Rosen, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

In this appeal, we consider whether defendant Curtis Gartrell, who fled from police outside of Newark Penn Station -- leaving behind a suitcase containing handguns, ammunition, illegal narcotics, and cash -- abandoned the suitcase and is therefore without standing to challenge law enforcement's warrantless search of the bag. The trial court granted defendant's motion to suppress the contents of the suitcase and the Appellate Division reversed the trial court's judgment. We now affirm the Appellate Division's ruling.

I.

A.

During the evening of November 6, 2019, an individual at Newark Penn Station reported to New Jersey Transit Police Officer Thomas Dietze that he had been punched in the side of his face by defendant Curtis Gartrell. In a

2

heavily trafficked area on the sidewalk outside of Penn Station, Officer Dietze spoke to the victim while a group of officers spoke with defendant.

New Jersey Transit Police Officer Adam Konopka was on patrol at Newark Penn Station when he was dispatched to respond to the disturbance as a backup officer. Officer Konopka's body camera footage captured the officers' interaction with defendant.

Throughout the conversation, there was a blue rolling suitcase near defendant. In speaking with defendant, an officer explained that they were going to run a search for outstanding warrants against defendant. While waiting for the results of the record check, defendant had several phone conversations with a person he referred to as "Spoon" and "bro," who defendant claimed was coming to pick him up. Over the course of several minutes, defendant asked "Spoon" where he was and attempted to locate him. While speaking with officers, defendant identified a white SUV as belonging to "Spoon," but it is unknown whether the driver of that vehicle was "Spoon" or anyone defendant knew.

Meanwhile, the results of the record check revealed an active warrant for defendant. Officers informed defendant of the warrant and advised him that they intended to place him under arrest. Defendant asked the officers whether he could first give his luggage -- the blue suitcase -- to "Spoon," but they

3

declined the request, stating they would first take defendant into custody. Defendant called out, "'Spoon,' will you get my clothes, bro," and turned as if preparing to be handcuffed; he then fled from the officers on foot, leaving the blue suitcase unattended on the sidewalk. Officers apprehended defendant after a brief foot chase lasting approximately forty seconds. A police report states that "the white SUV fled the area shortly after the foot pursuit and property was unable to be transferred to the driver."

While other officers chased and arrested defendant, Officer Dietze secured the bag as he spoke with the victim not far from where defendant had left his suitcase. Officer Dietze then promptly searched defendant's suitcase at the entrance of the station without a warrant. Officer Dietze's search of the blue suitcase revealed a Glock 19 handgun with ten rounds of 9mm ammunition in the magazine; a Hi-Point Model C9 handgun containing an empty magazine; a box of ammunition containing fifty Remington Luger 9mm full metal jacket rounds; another box of ammunition containing thirty-six Geco hollow point 9mm Luger rounds; 3.2 ounces of methamphetamines; one gram of marijuana; and $2,465.10 in cash.

A grand jury indicted defendant on two counts of second-degree possession of a firearm by a convicted felon, two counts of second-degree unlawful possession of a weapon, and one count each of third-degree

4

possession of a controlled dangerous substance, fourth-degree possession of a hollow point bullet, and fourth-degree resisting arrest by flight.

B.

Defendant filed a motion to suppress evidence recovered from the warrantless search of the suitcase. The State opposed the motion, arguing that defendant had abandoned the bag and, in any event, officers searched the suitcase incident to defendant's lawful arrest.

At the hearing on defendant's motion, the State called Officers Konopka and Dietze. At the conclusion of the testimony, the court heard argument and issued a written opinion suppressing the evidence found in the blue suitcase. The trial court reasoned that, although it was uncertain why defendant fled police, it was not because defendant wanted to discard the suitcase or relinquish his interest in it. The trial court also rejected the State's argument that the search incident to arrest exception applied, reasoning that defendant "was nowhere near the suitcase while it was being searched, and thus there was no need to ensure police safety or to avoid the destruction of evidence."

In response to the trial court's ruling, the State filed a motion for leave to appeal, which the Appellate Division granted. The State argued that the search of the suitcase was permissible both as a search of abandoned property

5

and as a search incident to arrest. The Appellate Division agreed with the State that defendant abandoned his bag and reversed the trial court's ruling.

Citing State v. Carvajal, 202 N.J. 214, 225 (2010), the Appellate Division considered three factors in determining whether the property was abandoned: first, whether defendant had control or dominion over the property; second, whether defendant knowingly and voluntarily relinquished his possessory or ownership interest in the property; and third, whether there were other apparent or known owners of the property. Because the parties did not dispute defendant's control over the suitcase, the Appellate Division focused on whether defendant relinquished his possessory interest in the suitcase by fleeing from it and whether defendant's communication with "Spoon" required the police to consult "Spoon" before they could open the bag.

The Appellate Division observed that fleeing from police and leaving property behind can implicitly constitute abandonment, citing State v. Farinich, 179 N.J. Super. 1, 7 (App. Div. 1981), aff'd o.b., 89 N.J. 378 (1982). The real question, therefore, was whether "defendant's request to leave his clothes with his brother[1] . . . alter[ed] the nature of his property interest in his

_____

[1] Apart from these references to "Spoon" as "bro," the relationship between "Spoon" and defendant has never been established or clarified.

6

bag at the moment he decided to flee arrest." The appellate court noted that "defendant could not feasibly come back to the station to retrieve the bag while succeeding in his objective of evading capture," and that there was no indication that the suitcase belonged to "Spoon" because he did not claim the suitcase was his and because defendant referred to the suitcase as "my clothes." The Appellate Division concluded that "[a]n objectively reasonable police officer, especially one assigned to a transit hub where bags left unattended present a threat to public safety, could easily conclude that a bag left behind after a police chase was abandoned, especially if no one came forward to claim it." Accordingly, the Appellate Division found that defendant abandoned the suitcase, and it reversed the trial court's ruling suppressing the evidence.

Defendant filed a motion for leave to appeal the Appellate Division's ruling, which we granted. 253 N.J. 279 (2023). We also granted the applications of the American Civil Liberties Union of New Jersey (ACLU), the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the Attorney General of New Jersey to participate as amici curiae.

Defendant urges this Court to reverse the judgment of the Appellate Division, contending that he did not abandon his possessory interest in his suitcase and that the search incident to arrest exception to the search warrant requirement does not apply in this case.

Defendant argues that he communicated to the police officers that he owned the suitcase before fleeing and intended to maintain his ownership in the suitcase. Defendant claims that his flight from the police was an attempt to evade arrest, not to relinquish his interest in the suitcase. He submits that because officers knew that the suitcase belonged to him and that he attempted to transfer the bag to "Spoon," the police knew that his flight did not establish abandonment of the property.[2] On this point, defendant contends that the Appellate Division's reliance on Farinich was misplaced because that case was decided under the federal "expectation of privacy" test, which this Court later

___

[2] At oral argument, this Court inquired as to "Spoon's" whereabouts. Defense counsel conceded that "Spoon" has never been identified and that they did not know (1) what happened to "Spoon"; (2) if the driver of the white SUV was "Spoon," or was even someone defendant knew; (3) whether anyone was in the white SUV; and (4) whether "Spoon" was defendant's brother or what the relationship between "Spoon" and defendant was.

abandoned in State v. Johnson, 193 N.J. 528 (2008).  Defendant further argues that the police should have investigated whether anyone else in the area, namely "Spoon," also had an ownership interest in the suitcase.

Amici curiae ACLU and ACDL encourage this Court to reverse the judgment of the Appellate Division and hold that defendant did not abandon the suitcase.  They contend that defendant's statements and actions, specifically in attempting to transfer the suitcase to "Spoon," evidence his intent to maintain possession of the bag.  The ACLU adds that the third factor of the abandonment test -- whether there are other known or apparent owners of the property -- favors defendant because he intended for "Spoon" to collect defendant and his belongings.  The ACDL also asserts that the Appellate Division relied too heavily on Farinich and other case law that preceded Johnson and Carvajal.

B.

The State counters that the search of the suitcase was constitutional as a search incident to arrest, and because defendant lost any reasonable expectation of privacy in the suitcase when he fled from the police.  According to the State, the act of fleeing police and leaving the bag behind in a busy public place like Penn Station demonstrates an intent to place as much distance between himself and the suitcase as possible.  Further, the State submits that

9

the record does not indicate whether "Spoon" was associated with defendant; nor does it indicate that "Spoon" was willing to speak with police and assert a property interest in the bag.

The State also argues that a rule which would require police officers to determine whether anyone else in an open, public area has an ownership interest in abandoned property is "unworkable, unreasonable, and dangerous." The State asserts that Johnson and Carvajal are inapplicable because in those cases, the police did not know who owned the supposedly abandoned items and there were a limited number of people who may have been owners.

Noting that this Court has "consistently found that when a person leaves an item unattended in an outdoor public space, even if reacting to police, the item is considered relinquished," the Attorney General argues that this Court should affirm the Appellate Division's decision in light of defendant's decision to flee and leave his suitcase unattended. The Attorney General underscores that defendant never claimed that the bag belonged to "Spoon," or that "Spoon" left his vehicle to attempt to retrieve the bag.

### III.

We begin by noting that our review of a trial court's factual findings on a motion to suppress evidence is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). Those "findings should be disturbed only if they are so clearly

10

mistaken 'that the interests of justice demand intervention and correction.'"

State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).  But legal conclusions drawn from the trial court's factual findings are reviewed de novo.  State v. Hubbard, 222 N.J. 249, 263 (2015).

A.

Here, the trial court determined that the search of defendant's suitcase violated his rights under both the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution.  Both "protect citizens against unreasonable police searches and seizures by requiring warrants issued on probable cause 'unless [the search] falls within one of the few well-delineated exceptions to the warrant requirement.'"  State v. Dangerfield, 171 N.J. 446, 455 (2002) (alteration in original) (quoting State v. Maryland, 167 N.J. 471, 482 (2001)).  When property is abandoned, however, the defendant has "no right to challenge the search or seizure of that property."  Johnson, 193 N.J. at 548.

"[T]o provide broad protection to 'the privacy rights of our citizens and to deter the police from conducting unreasonable searches and seizures,'" we have determined that property is abandoned only if "(1) a person has either actual or constructive control or dominion over property; (2) he knowingly and voluntarily relinquishes any possessory or ownership interest in the property;

11

and (3) there are no other apparent or known owners of the property."

Carvajal, 202 N.J. at 223, 225 (quoting Johnson, 193 N.J. at 548). The State bears the burden of proving that property was abandoned by a preponderance of the evidence. Johnson, 193 N.J. at 548 n.4.

In Johnson, this Court considered whether a defendant had standing to object to the search of his bag after disclaiming his ownership of it in response to questioning by police. Id. at 533. There, officers were dispatched to an apartment in response to a domestic violence report. Id. at 535. While executing an arrest warrant for the offense, officers came upon the defendant speaking on the phone. Id. at 536. An officer asked Johnson to leave the apartment, and Johnson agreed to leave after he collected his belongings. Ibid. Johnson grabbed a box and placed it into a duffel bag, but when officers asked whether the items belonged to him, Johnson denied ownership. Id. at 536-37. After another occupant of the apartment denied ownership of the duffel bag, officers searched the bag and discovered a handgun. Id. at 537.

Applying the three-factor test, this Court concluded that the bag was not abandoned, reasoning that it was in an apartment with five occupants and could have belonged to any one of them. Id. at 549-50. The Court observed that "the police might still have easily determined its owner." Id. at 550. Thus, we held that the defendant had not surrendered his standing to challenge

12

the constitutionality of the search solely because he elected not to incriminate himself by affirmatively admitting ownership of the bag. Id. at 551.

In this case, the suitcase belonged to defendant. Unlike in Johnson, no facts support any other person's ownership or possessory interest in the suitcase. Indeed, no facts support the existence of a relationship between defendant and "Spoon," or even that "Spoon" is an actual person who was waiting for defendant across the street from Newark Penn Station.

In Carvajal, we considered whether an unattended bag left on a bus was abandoned after every passenger on the bus denied owning it. 202 N.J. at 218. There, officers surveilled a bus stop in response to a confidential informant's tip that a young male was traveling from Miami to New York with a large quantity of narcotics. Id. at 218-19. A man matching the description of the young male stepped off the bus; officers approached him and asked whether he would be willing to answer questions. Id. at 219. Carvajal, the defendant, told officers he was traveling for business and did not have any luggage with him. Ibid. Officers asked the remaining passengers to identify their luggage, which revealed only one large duffel bag that remained unclaimed. Id. at 220. Carvajal told officers he was not the owner of the duffel bag. Ibid. After a canine sniff, officers searched the bag without a warrant and found twenty-six ounces of heroin. Ibid.

13

We explained that <u>Carvajal</u> differed from <u>Johnson</u> because the officers came "upon property that ha[d] no apparent owner," and because Carvajal had no apparent control over the unattended luggage "[f]rom the objective viewpoint of the police." <u>Id.</u> at 225-26. We also recognized that, "unless there is some indication that someone owns or controls property left in a public place or on a public carrier, the property -- for practical and standing purposes -- is abandoned." <u>Id.</u> at 226. We explained that the determination of whether Carvajal knowingly and voluntarily relinquished his interest in the luggage was based on the totality of the circumstances. We noted that "[n]othing in the record suggest[ed] that [Carvajal] did not understand what he was doing when he denied owning any luggage" because police were not overbearing or coercive; Carvajal was unequivocal in claiming that he did not own the luggage; and Carvajal's detention was brief and constitutionally permissible. <u>Id.</u> at 227-28. Notably, and unlike in <u>Johnson</u>, "police did not search the bag until all apparent owners had disclaimed any possessory interest in the property." <u>Id.</u> at 229-30. This Court concluded that the bag had been abandoned because Carvajal "denied having any possessory or ownership interest in the duffel bag, and the police attempted to identify other potential owners before conducting the search of the bag." <u>Id.</u> at 230.

14

In Farinich, relied upon by the Appellate Division here, the court considered whether two defendants who dropped their suitcases and fled from police had abandoned their luggage. 179 N.J. Super. at 3-4. There, the Newark Police Department informed the Port Authority about a suitcase aboard a plane bound for Newark that contained suspected marijuana. Id. at 4. Officers positioned themselves near baggage claim and observed the two defendants collect the luggage. Ibid. The officers followed the defendants, took both by the arm, and said they wanted to question them about their luggage. Ibid. Both defendants dropped their suitcases and fled but were later apprehended. Ibid. The Appellate Division held, and we agreed in affirming the decision, that it would be "unreasonable to infer anything other than that defendants intended to place as much distance between themselves and the suitcases as possible." Id. at 7. People who drop their belongings and flee under similar circumstances "ha[ve] no desire ever to reclaim their belongings." Ibid.

### B.

Here, no one disputes that defendant fled police to avoid a lawful arrest, knowing that "Spoon," if such a person existed, did not yet have possession of the suitcase. The act of fleeing to avoid a lawful arrest in a public place demonstrates defendant's intent to place as much distance as possible between

15

himself and the property left behind.  When defendant ran from police in the heavily trafficked area on the sidewalk outside of Penn Station, without any indication that he intended to return, he abandoned the suitcase in a public place.

Defendant is correct that we no longer apply the expectation of privacy test referred to in Farinich.  See Johnson, 193 N.J. at 548, 549 n.5 (stating that, "because we adhere to a policy of automatic standing . . . any exception to that rule must be carefully drawn and consistent with the principles underlying our standing jurisprudence," and therefore formally abandoning case law suggesting "that the determination of whether property is abandoned is governed by a 'reasonable expectation of privacy' standard").  We nevertheless find, as we did in Farinich, that fleeing from police in a public place expresses an intention to create distance between the actor and the property left behind and -- in the absence of evidence to the contrary -- without an intention to reclaim the property.  As we said in Carvajal, "unless there is some indication that someone owns or controls property left in a public place or on a public carrier, the property -- for practical and standing purposes -- is abandoned."  202 N.J. at 226.  Defendant's vague references to "Spoon," who remains unidentified, do not rise to the level of an indication of ownership and control.  And, unlike when there are a finite and fixed number of potential

16

owners as in <u>Carvajal</u> and <u>Johnson</u>, the police cannot be expected to identify and canvass everyone at or near a major transportation hub to determine who, if anyone, might have a possessory interest in a bag deliberately left behind in a public place.

In <u>Johnson</u>, we explained that "property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property." 193 N.J. at 549. And once property is abandoned, the previous owner of that property has no standing to challenge the warrantless search of that property. For defendant to have standing to move to suppress the evidence seized here, he would need to have a continuing "proprietary, possessory or participatory interest in" the property seized -- the blue suitcase. <u>Carvajal</u>, 202 N.J. at 222 (citing <u>Johnson</u>, 193 N.J. at 541). But defendant's interest in the suitcase ceased when he fled police outside Penn Station and deliberately left his suitcase behind in a public place with no evidence of anyone else's interest in the bag. Because the State has demonstrated by a preponderance of the evidence that the suitcase was abandoned, defendant is without standing to challenge its seizure and search, <u>Johnson</u>, 193 N.J. at 548-49, and we need not reach the issue of whether police conducted a constitutionally valid search incident to arrest.

17

IV.

For the reasons set forth above, we affirm the Appellate Division's judgment and remand for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and FASCIALE join in JUSTICE SOLOMON's opinion. JUSTICE NORIEGA filed a dissent.

18

State of New Jersey,

Plaintiff-Respondent,

v.

Curtis L. Gartrell,

Defendant-Appellant.

JUSTICE NORIEGA, dissenting.

I must respectfully dissent. The majority unnecessarily expands the previously narrow abandonment exception to our automatic standing rule by making abandonment synonymous with flight and permitting a law enforcement shortcut to violate a suspect's constitutional protections. It is a step backwards in our jurisprudence to announce a rule that mere flight, without more, ends a defendant's constitutional right to challenge a search where, as here, the defendant's actions, words, and behavior all demonstrated his control of and possessory interest in the subject luggage before fleeing.

The police had only to follow protocol to reach the same result through constitutionally permissible means by conducting an orderly inventory search for their own protection and those present at Newark Penn Station. Instead, they proceeded with a warrantless search under the theory of "search incident to arrest." And the Court now approves the haphazard and blind search of

1

defendant's property on a public street, moments after defendant's arrest several blocks away, under a retrofitted theory of abandonment that arose only during litigation, in response to motion practice.

For the reasons below, I cannot agree to such a finding.

I.

A.

Standing must be construed broadly under the New Jersey Constitution. State v. Bruns, 172 N.J. 40, 56 (2002). It entitles criminal defendants to challenge an unreasonable search and seizure under Article I, Paragraph 7 of the New Jersey Constitution if they can demonstrate a proprietary, possessory, or participatory interest in the place searched or items seized. Ibid.

In State v. Alston, this Court adopted an automatic standing rule that permits a defendant to bring a suppression motion when he is "claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the evidence attained may be used against him in a penal proceeding." 88 N.J. 211, 228-29 (1981). In doing so, this Court parted with the "legitimate expectation of privacy" analysis followed by the United States Supreme Court. Ibid.; see also Rakas v. Illinois, 439 U.S. 128, 142 (1978).

In State v. Johnson, 193 N.J. 528 (2008), this Court reaffirmed that departure from the expectation of privacy standard. Johnson marked the

2

Court's first opportunity to address whether a defendant possessed standing to challenge the search or seizure of purportedly abandoned property against the backdrop of Alston. In doing so, the Court stressed that the rationale for an automatic standing rule did not simply incorporate "notions of reasonable expectation of privacy, but also advance[d] other important state interests." Id. at 543.

The first of those three interests is that "a person should not be compelled to incriminate himself by having to admit ownership of an item that he is criminally charged with possessing in order to challenge the lawfulness of a search or seizure." Ibid. Second, the State should not be placed in the conflicting position of "prosecuting a defendant for possession of an item in violation of the law," on the one hand, while arguing that the defendant did not possess a privacy interest for standing purposes on the other. Ibid. Third, permitting broader standing for defendants increases privacy rights for our "citizens and encourage[s] law enforcement officials to honor fundamental constitutional principles." Ibid.

With those interests in mind, the Court carved out a narrow exception to the automatic standing rule, holding that for the purposes of standing, property is abandoned when a person:

> 1. Who has control or dominion over the property

2. Knowingly and voluntarily relinquishes any possessory or ownership interest in the property and

3. When there are no other, apparent or known, owners of the property.

[See id. at 549.]

The Court then assessed the facts of the case to determine whether that abandonment exception applied.

In Johnson, the police arrived at an apartment to arrest the son of a resident; the defendant was simply a visitor at the home, where at least five people were present. Id. at 549-50. After the arrest, the defendant was asked to gather his things and leave. Ibid. He grabbed a duffel bag, placed a small cigar box into the bag, and began to exit. Ibid. When asked whether the bag in his hand was his, the defendant equivocated, replying first that "yes" the bag was his, and then almost immediately saying "no." Id. at 550. The police officer took possession of the bag and asked one other person present whether he knew who owned the bag. Ibid. When that single other person said that he did not know, the officer proceeded to search the bag, finding a .45 caliber gun. Ibid.

The Court found the warrantless search of the bag unconstitutional. Id. at 557. We held that "New Jersey's broad rule of standing protects the privacy rights of not just the accused, but also others in a home who might not have a

4

ready forum in which to make their voices heard." Id. at 550. The Court explained that the bag "was not truly abandoned because the police might still have easily determined its owner." Ibid.

But we also held that "defendant should not be stripped of standing because he disclaimed ownership of the duffel bag in response to police questioning." Id. at 551. The defendant's attempt to disavow the property seized did not end the Court's inquiry. Id. at 549. Instead, this Court considered whether, despite his efforts to disclaim the bag, the defendant's standing to challenge the search survived, "either because he retained a proprietary, possessory, or participatory interest in the duffel bag and its contents or because the seized evidence was necessary to prove an essential element of the crime charged." Ibid.

In finding that his standing did survive, we stressed a basic principle of our automatic standing rule -- "that a defendant should not have to sacrifice his right against self-incrimination to assert his constitutional right to be free from an unlawful search." Id. at 551. Automatic standing was developed, in part, to avoid that very dilemma -- "of requiring defendant to gain 'standing to assert a Fourth Amendment right only by relinquishing his Fifth Amendment privilege against self-incrimination.'" Ibid. (quoting Alston, 88 N.J. at 222 n.6).

5

Accordingly, despite his disclaimer, the defendant in Johnson did not abandon the bag for purposes of standing. Ibid.

B.

In State v. Carvajal, 202 N.J. 214 (2010), this Court was called upon once more to review the issue of abandonment under the Alston standard, this time guided by the Johnson test. In Carvajal, the police were provided information by an anonymous caller that a bus traveling from Miami to New Jersey would be carrying a bag of suspected controlled dangerous substances. Id. at 218-19. The informant provided a detailed description of the suspect, which closely matched the defendant. Id. at 219. Upon arrival, three officers approached the defendant as other passengers were collecting their luggage. Ibid. The defendant agreed to speak with police, denied having any luggage on the trip, provided his identification, and claimed to have no claim ticket for any luggage. Id. at 220. After verifying that every other passenger had a corresponding piece of luggage, the police then asked the defendant if the remaining piece of luggage with no known owner belonged to him -- to which the defendant responded "no." Ibid.

In reviewing the first Johnson factor -- whether an identifiable person has control or dominion over the property in question -- the Court "state[d] the obvious" -- that, "unless there is some indication that someone owns or

6

controls property left in a public place or on a public carrier, the property -- for practical and standing purposes -- is abandoned." Id. at 226. The Court acknowledged that the next reasonable action by the police is to "attempt to learn the identity of the owner of the property and preserve [the] contents." Ibid. (citing South Dakota v. Opperman, 428 U.S. 364, 369 (1976)). The Court distinguished Johnson and found that the defendant in Carvajal had no dominion or control over the bag, the bag did not carry any identifying information, and the defendant did not possess a claim ticket. Ibid. Despite finding that the defendant did not possess dominion or control over the bag, the Court proceeded to evaluate all the Johnson factors.

As to the second factor, the Court reviewed whether Carvajal voluntarily and knowingly relinquished an interest in the bag. Id. at 227. The Court noted that

> [t]o act voluntarily is to act with a free and unconstrained will, a will that is not overborne by physical or psychological duress or coercion. See Schneckloth v. Bustamonte, 412 U.S. 218, 225, 227 (1973). To act knowingly is to act with a conscious understanding of what one is doing. Black's Law Dictionary 950 (9th ed. 2009) (defining "knowing" as "[h]aving or showing awareness or understanding; well-informed"). See also N.J.S.A. 2C:2-2(b)(2) ("A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result.").
>
> [Id. at 226-27 (second alteration in original).]

7

The Court thus expanded upon the second <u>Johnson</u> factor, holding that, to determine "whether a defendant voluntarily and knowingly relinquished a possessory or ownership interest in the property in response to police questioning, a court should apply a totality-of-the-circumstances analysis." <u>Id.</u> at 227. Applying that analysis to the facts before it in <u>Carvajal</u>, the Court found an express and unequivocal relinquishment of ownership of the bag, that is, the "defendant acted consistent with someone who had no ownership rights or interest in the bag." <u>Id.</u> at 228-29.

As to the final factor, this Court determined that after defendant denied having any luggage on the bus, the police made reasonable inquiries of the other passengers to confirm the bag did not belong to any of them. <u>Id.</u> at 229. By the time the police began their search, they had confirmed that they were left with an unclaimed duffel bag with no apparent or known owner in a bus depot. <u>Id.</u> at 229-30. The Court therefore held that the bag was abandoned and that the defendant had no standing to challenge the warrantless search of the bag. <u>Ibid.</u>

### C.

The three-part test for the narrow abandonment exception set forth in <u>Johnson</u> and refined through <u>Carvajal</u>'s addition of the totality-of-the-circumstances inquiry is the standard that should govern the Court's analysis

8

here. In adopting that rule, the Court specifically disapproved <u>State v. Lee</u>, 245 N.J. Super. 441 (App. Div. 1991), to the extent that it relied upon the "reasonable expectation of privacy" analysis. 193 N.J. at 549 n.5. <u>State v. Farinich</u>, decided ten years earlier, relied on the same "reasonable expectation of privacy" analysis, <u>see</u> 179 N.J. Super. 1, 6 (App. Div. 1981), <u>aff'd</u>, 89 N.J. 378 (1982), and was thus also implicitly disapproved by <u>Johnson</u>. The relevance of <u>Farinich</u> in this instance ends with its factual similarity to the case before us. The Appellate Division and majority err in relying upon it today.

## II.

Application of the proper analysis to the facts of the present case should reach a result contrary to that of the majority. The trial court was correct. It had the opportunity to review the facts and circumstances of the encounter, it heard the officers' testimony and believed they testified credibly, and it determined that the State had not established, by a preponderance of the evidence, that the luggage was abandoned. The court properly evaluated the <u>Johnson</u> factors and, reviewing those factors again here, I reach the same conclusion.

9

A.

As to the first Johnson factor, actual or constructive control or dominion over property, the majority concedes that there is no question that the suitcase belonged to defendant. See ante at ___ (slip op. at 13).

Defendant was approached by the police, and the encounter spanned the length of a city block abutting Penn Station in Newark. For the entirety of the interaction, before he fled, defendant's control and dominion over the luggage indicated that he was in fact the owner of the luggage. Based upon his words and conduct, the police also believed that the suitcase belonged to him and there was no question as to this fact. Indeed, Officer Dietze testified that he searched the suitcase because it was part of the defendant's property, that he was conducting a "search incident to arrest," which he believed to encompass searching an arrestee's property, and that no one else had come to claim possession of the luggage.

More notably, the officer explained that even if someone had approached him regarding the defendant's property, he does not allow arrestees to hand off their belongings to other people. Thus, the police had sufficient information to assign ownership of the bag to defendant. The officer's testimony during the suppression hearing, in my view, was overlooked by the majority.

10

In stark contrast to Johnson or Carvajal, there was never any doubt concerning who owned the luggage, even after defendant left the scene. The first factor here must be construed in favor of defendant.

B.

The State must next demonstrate that the defendant knowingly and voluntarily relinquished any possessory or ownership interest in the property. When assessing whether this occurred in the face of police questioning, the reviewing court must engage in a totality of the circumstances analysis. Carvajal, 202 N.J. at 227. Factors to consider include the nature and degree of the questioning, the clarity and certainty of the responses, and any restraint on the defendant's freedom of movement. Ibid.

Reviewing the entirety of the episode, with the benefit of the trial court's testimonial review, defendant fled to avoid the impending arrest for the discovered warrant, without the burden of rolling a suitcase behind him, impeding his escape. The majority's conclusion that his motive was to divest his property interest in the luggage is not borne out in the facts of the case. Defendant had already provided all his pedigree information. The police now had possession of the suitcase, based on which they would later charge defendant with various possessory offenses.

11

Regardless of the physical distance he achieved from the bag, there is very little possibility that defendant could have convinced police that the luggage did not belong to him. In the event of a trial in this matter, the State would have to focus heavily on all of the conduct highlighted here to prove possession and knowledge of the very bag in which the majority suggests that defendant had no possessory interest.

The majority requires that defendant engage in an impossible choice. The officers charged defendant with possession of the contraband in the bag, and the majority claims he never intended on reclaiming the bag, even though to do so would incriminate him for the very possession charges he is currently attempting to challenge. "Those are hardly the circumstances that would allow for a voluntary disclaimer of a possessory interest in the bag for standing purposes," and the dilemma defendant faced in being forced to choose between his Fourth and Fifth Amendment rights is precisely what our jurisprudence sought to avoid in developing the automatic standing rule. Johnson, 193 N.J. at 551.

The majority forces precisely the choice that Johnson forbids because it fails to consider the totality of the circumstances in its analysis and instead focuses exclusively on defendant's flight, finding that defendant's physical separation from the luggage, which cut off his "control or ownership,"

12

combined with the lack of any other apparent owners, results in the luggage being abandoned.  See ante at ___ (slip op. at 17) ("[D]efendant's interest in the suitcase ceased when he fled police outside Penn Station and deliberately left his suitcase behind in a public place with no evidence of anyone else's interest in the bag.").  The majority erroneously relies upon Farinich in holding that creating distance between the actor and the property left behind conclusively establishes that defendant meant to divest himself of any possessory interest in the luggage.

The isolated fact of defendant's flight, without a full evaluation of the additional facts in this case, misses the mark.  Examining the facts of the present case reveals that the officers clearly believed that defendant was the owner of the luggage and that he did not divest all possessory interest in the luggage by fleeing the scene.

C.

Finally, because ownership was established in this case, it was unnecessary to reach the third Johnson factor in this matter.

"Spoon," the unknown individual to whom defendant was purportedly trying to give the luggage, was irrelevant to the analysis, especially given the officers' testimony that they would not have delivered defendant's property to him even if "Spoon" had approached.  Cf. ante at ___ (slip op. at 17).

13

And the majority's comment that "police cannot be expected to identify and canvass everyone at or near a major transportation hub to determine who, if anyone, might have a possessory interest in a bag deliberately left behind in a public place," Ante at ___ (slip op. at 17-18), unfairly suggests a requirement that does not fit the facts of this case.

Carvajal is unlike the present case. There, the police had to make reasonable deductions to ferret out the potential owner of the bag they believed carried suspected CDS. 202 N.J. at 229. After the defendant in that case denied ownership of the bag, the officers had to inquire of the remaining passengers to exclude other possible owners before determining the bag was abandoned. Ibid. The Court relies on Carvajal for the premise that "unless there is some indication that someone owns or controls property left in a public place or on a public carrier, the property -- for practical and standing purposes -- is abandoned." Ante at ___ (slip op. at 16).

But that reliance is misplaced in light of the circumstances here. At no time did the police in this case believe they possessed an article of luggage without an owner. They knew precisely where the owner was at the exact moment they chose to conduct the search, and they did in fact believe defendant was the owner.

14

Thus, although I do not think it was necessary to reach the third <u>Johnson</u> factor, it should have been determined in favor of defendant in this case, like the other factors.

In sum, the State failed, under a preponderance of the evidence standard, to prove that the suitcase was abandoned. The trial court's decision was correct. Defendant retained his standing to challenge the warrantless search of his bag because it was not abandoned, and the police needed an exception to the warrant requirement to justify their intrusion.

III.

The concept of abandonment is a legal fiction, used to address standing. The majority engages in this legal fiction by drawing a bright line to determine the divestment of a property interest -- in this case, the moment of defendant's flight. The majority's holding stretches the concept of abandonment into an exception to the warrant requirement, rather than a pure issue of standing.

This standard will add confusion to arrest situations, which, as Officer Dietze explained during the suppression hearing, are "tense times." Strong and sound protocol that can be followed in every circumstance allows for consistent decision-making and confidence in police actions. Attempting to discern a moment of abandonment is ill-suited for debate during the pressure-filled moments surrounding the detention and arrest of a suspect. Indeed,

15

abandonment was not even proffered as a justification for the search until the State argued it as an afterthought before the trial court. Such a standard is untenable and unreliable.

For their own security and safety, and that of the civilians in and around Penn Station, the officers should have conducted an orderly search, in a safe and secure location, to assure no dangerous implements were present in the luggage, rather than conducting a haphazard search on the street corner. Police possess a variety of options that permit warrantless searches upon arrest. They could have legally entered defendant's luggage had they followed proper protocol. And while police safety is of paramount concern in the wake of a fleeing suspect, a police officer's obligation to act constitutionally does not evaporate when dealing with the whims of a suspect. An officer is still confronted with the rules and regulations that they swore to uphold, unlike a suspect whose conduct is an affront to the law. A defendant's criminal behavior is not an automatic license to short circuit the Constitution.

Under the totality of the circumstances, it is clear that defendant fled solely to avoid being arrested and that, in doing so, he did not surrender his rights to challenge a warrantless search of his property. The majority's opinion is a result our jurisprudence regarding standing does not support.

For those reasons, I must respectfully dissent.